## JOHN HUEY vs. ASHTON RICHARDSON.

A public officer upon whom a legal duty is enjoined, has a right to avail himself of all the means which are necessary and proper to enable him to execute that duty.

A public officer required by law to perform, *to the best of his skill and judgment*, a duty requiring the aid and skill of others, is not liable in *damages* for the mere *mistake* of his necessary agents, carefully selected and properly instructed.

Distinction is this respect, between private individuals and public officers.

Distinction between public officers acting for their *own advantage* in the discharge of an office ; and officers acting merely for the *benefit of the public*.

Distinction between public officers entitled to indemnity from their employer, and officers *compelled by oath* to act to *the best of their skill and judgment*, according to law, and for whom no indemnity is provided.

A road commissioner, in opening a road under an order of court, which describes the route of the road only by course and distance, is bound to follow the course and distance as ascertained by the compass and chain, with proper allowances for the variation of the needle, whether arising from local or general attraction.

For this purpose, he is not only authorized, but it is his duty to employ a skilful surveyor to ascertain the correct route, according to the record. In the choice of a surveyor, he is bound to exercise his best skill and judgment, and if he intentionally, carelessly or negligently employ an incompetent surveyor, who deviates from the line pointed out by the order, he is liable in damages to the party aggrieved.

In laying out a road under an order of court, the road commissioners are liable for any *deviation* from the line of road returned by the freeholders and approved, if that deviation arise either from malice, neglect or the omission to exercise their best skill and judgment in the performance of their duty. But they are not answerable for any accidental deviation, caused by the *mistake* of a competent and faithful surveyor, if not aware of it at the time of opening the road ; nor are they answerable in any form of action, for the discharge of any legal duty, honestly and carefully done, according to the best of their skill and judgment.

TRESPASS quare clausum fregit. Plea, not guilty ; and, by consent, leave to give in evidence under the general issue any matter of defence by way of justification.

The jury were sworn to try the issue joined, and the case proceeded for some time before this entry attracted the particular notice of the court; but they now required that a plea of " justification as road commissioner of Christiana hundred, in laying out a public road under an order of the Court of General Sessions" should be entered on the record, and an issue made up upon it, and that the jury should be sworn over again. They said they could not with propriety try the case on the agreement, for the jury might have to render a verdict on the justification, when they were only sworn to try the issue of not guilty.

This was an action of trespass *quare clausum fregit*, in which the plaintiff, who was the owner of a farm in Christiana hundred, sought to recover damages for injury done by the alledged improper opening of a public road through his farm. The defendant was a road com-

missioner, elected by the people in November 1834, agreeably to law, and now pleaded two pleas to the action, to wit: 1st, not guilty; 2d, a special justification; upon which issues were joined. On the trial before the jury many witnesses were examined, and it appeared in evidence that before the commencement of this suit, the defendant did, in the year 1836, as road commissioner of Christiana hundred, direct and order the overseer for that hundred with laborers, to open a public road through the plaintiff's farm, in consequence of which the plaintiff's close, as stated in the declaration, was entered, his crops were exposed by the removal of his fences, and he was deprived of a part of his land, which thus became occupied as a highway. The defendant relied on his plea of justification, and gave in evidence to support it his election to the office of road commissioner as aforesaid, and his continuance in that office until at and after the time of the alledged trespasses mentioned in the declaration; the proceedings and order of the Court of General Sessions of the Peace for the county of New Castle, for laying out a public road through a part of Christiana hundred, at May term 1830; the return of the five freeholders appointed by that court to lay out said road, describing it by courses and distances, assessing the damages of the landholders, and awarding to the plaintiff, among others, full damages in satisfaction for the injury done him thereby; the *confirmation* of the road as laid out by the freeholders at December term 1830, and the *approval* of the road by the Levy Court of New Castle county in January 1831; by all which it was manifest that the said road so located by the freeholders became, under the act of the legislature, (*Digest Del. Laws*, 470,) *established* "as a public road or common highway." The defendant then showed, that after he became the road commissioner of the hundred of Christiana, in which this highway was so laid out and established, he proceeded as ordered by law to open the same—that the former road commissioners had made ineffectual attempts to open and locate it, and having intentionally deviated from the courses and distances of the road as established, heavy damages had been awarded against them to the present plaintiff, by the verdict of a jury for opening a road not authorized by the order of court, (1 *Harr. Rep.* 145;) that by reason of the delay thus occasioned in properly opening the road, it had remained closed about five years after the establishment of it by law as a public highway, and that the landmarks and boundaries set up by the freeholders had in the mean time disappeared, so that at the time it became his duty by law to open the road, (for the omission of which the statute made him liable to indictment and fine,) there were no other means of ascertaining the location of it but the courses and distances returned

by the freeholders in 1830, at the time of laying out the road by order of court; that being fully aware of the difficulty of opening this road to the satisfaction of all parties interested, he did, in May 1835, employ Enoch Lewis, the surveyor of the city of Philadelphia, to run the lines of said road, and ascertain the route through which it had been laid out, *with instructions to the surveyor to run according to the record;* that said surveyor having run the lines and made a plot of the location, the work was by the defendant submitted to legal counsel for advice; and that, out of caution, by that advice, the said Enoch Lewis was further employed and instructed to survey and locate said road a second time, *agreeably to the record of the road as laid out by order of court;* that such second survey was made by the said surveyor in October 1835, and that in accordance with that survey the said Richardson, as road commissioner, did proceed to cause to be opened and made the public road, which held its course through a part of the plaintiff's farm. It appeared on the evidence that Lewis the surveyor was a man of skill in the science of surveying, and of undoubted integrity in the discharge of his office. Much evidence was given to show that by the influence of general and *local attraction* of the needle, arising from the change of the ferruginous matter on the route of the road as laid out, it was exceedingly difficult if not absolutely impossible for different surveyors with different instruments to locate the route of the road described on the return of the freeholders, in the absence of the landmarks mentioned by them, (which had disappeared during the five years,) precisely on the same place by surveys made at different times; so that between the locations of the different surveyors examined by the respective parties there was a variation which appeared to be unavoidable, although the greatest care was taken by each of the surveyors in running the courses and distances, with a view to ascertain the precise route of the road according to the order of court. The result of these surveys was, that two surveyors having made a different allowance for the influence of the local attraction from that made by Lewis, had somewhat varied from his route on one of the ten courses and distances; and the plaintiff's counsel urged before the jury, that the road commissioner was, by the weight of evidence in the cause, a trespasser in so far as Lewis' survey varied from the two other surveys, which were made both at the same time, though at a different time from that of Lewis' survey.

The case was argued at great length before the jury by *Richard H. Bayard* and *James A. Bayard* for the plaintiff, and by *Hamilton* and *James Rogers* for the defendant.

*The Court* charged the jury in substance as follows, to wit:

1. That a road commissioner opening a road under an order of court, which describes the course and distance only, is bound to follow the course and distance as ascertained by the compass and chain, with proper allowances for the variation of the needle, whether arising from local or general attraction.

2. But as the road commissioner is not presumed to be a surveyor, and is indictable if he does not open the road, he is not only authorized but it is his duty, in the absence of the landmarks set up by the freeholders, to employ a skilful surveyor to ascertain the route according to the courses and distances on the record, preparatory to opening the road. In the choice of this surveyor he is bound to exercise his best skill and judgment, and if he intentionally, or by carelessness or negligence, select an incompetent surveyor, who deviates from the courses and distances on the record, he is liable in damages to the party aggrieved by opening the road agreeably to the survey.

3. But where it appears that the road commissioner has in every particular acted according to the best of his skill and judgment, honestly and carefully endeavoring to open the road according to the courses and distances in the order of court, and for this purpose has selected a surveyor of acknowledged reputation for integrity, skill and competency, giving him instructions to run the road accurately according to the order, then such road commissioner is not liable in an action of trespass for a mistake made by such surveyor, unless he was aware of its existence before opening the road. In such a case his opening the road agreeably to the survey, is a good justification for him in this action. For every intentional, careless or negligent deviation from the order of court, the commissioner is responsible to the party aggrieved by the wrong.

Under this charge from the court, the jury found a verdict for the *defendant.*

A rule to show cause why a new trial should not be granted, having been applied for by *J. A. Bayard,* of counsel for the defendant, was granted by the court; and, after hearing the argument of the rule, the chief justice delivered the following opinion of the court.

J. M. CLAYTON, *Chief Justice.*—The act of assembly of the 28th of January, 1823, (*Digest,* 477,) imposes a fine on every road commissioner who shall neglect or refuse to take upon him the duties enjoined upon him by law. The eighth section of that act fixes his compensation for every day's attendance in the discharge of his duties at the sum of one dollar and twenty-five cents, and no more; a

compensation which, as it scarcely exceeds that of a day-laborer, cannot have been intended as a remuneration for any extraordinary responsibilities. Many and important duties, however, are devolved on this officer; and among other things it is provided by the seventh section of the act of the 10th of February, 1829, (*Digest,* 471,) that if he shall refuse or neglect beyond a reasonable time to open and make any new public road or common highway duly laid out and approved within the limits of the hundred of which he is commissioner, he shall be liable to indictment and fine as for a misdemeanor. It is to be noted, too, that the law no where provides any indemnity by the public to the officer for any error or mistake, or any thing whatever, which may be done or committed by him or any of his agents in the execution of his official duties. His oath of office, which seems to circumscribe the range of his responsibilities, is simply that he "*will to the best of his skill and judgment, execute the duties of commissioner of roads according to the directions and meaning of the acts of assembly.*"

The first question to be considered is, whether this officer acted within the scope of his legal authority in the employment of a surveyor to run the courses and distances marked out in the order of court, with a view to enable him to ascertain the route of the road as established by law; and on this question it is impossible to entertain a doubt. For there is no treatise; there is no adjudged case relating to the subject, which does not lay down the principle that an officer upon whom a legal duty is enjoined, has a right to avail himself of all the means which are necessary and proper to enable him to execute that duty. Here the landmarks set up by the freeholders to indicate the route of this road had disappeared long before his election to this office; and, in their absence, there was no possible mode of ascertaining the route of the road which it was his duty to open, but that of seeking the assistance of a skilful surveyor. The courses and distances on the record merely describing an air line, in the absence of boundaries for him to go by, were a sealed book which no man could interpret or make legible to him, but a competent surveyor. It was not only his right but his duty to employ such a surveyor, and had he opened the road without resorting to means of information so palpably necessary and proper, we should, under the circumstances of this case, have held him justly responsible for the slightest deviation from the route; for he who acts in the discharge of a public office without the means necessary and proper for the performance of his duty when so easily within his reach, acts at his peril. But it cannot be contended, that because the surveyor is not sworn to run the courses and distances with fidelity, and no

positive statute has in terms provided for his appointment, therefore the road commissioner had no right to open the road agreeably to the survey. With just as much propriety and fairness might it be urged, that in the constantly occurring case where a legislative act has empowered a commissioner of public buildings to build a court house, a jail, or any other public edifice, such commissioner has no right to employ an architect to plan, or a carpenter or mason to erect the structure, simply because these necessary agents are not acting under oath, nor mentioned in the statute. In these and all similar cases of public trusts which are executed every where throughout our country, often for a nominal consideration, or without any substantial compensation, a doctrine holding the public commissioner or trustee who acts without any view to profit, or to his own individual benefit, and the sole object of whose commission is the benefit of the public, to be responsible for the performance of the duty without affording him the instruments to execute it, would invariably defeat the very objects of the legislature. It would be not less absurd than a law enjoining it upon a carpenter to build a house and denying him the use of a saw or jack plane.

But there is another question, on account of which we are glad that this application for a new trial has been made, inasmuch as it furnishes us with an opportunity of reviewing the cases on a most important subject. It has been strenuously insisted, in the course of the argument, that the road commissioner is responsible for any and every mistake of the surveyor, however accidentally or unavoidably made, even although the road commissioner was not aware of the mistake at the time of opening the road; in other words, it is contended that the road commissioner, liable as he was to indictment for not opening the road; and giving, as he did, careful instructions to a faithful and competent surveyor by him appointed, to run the road agreeably to the order of court, is nevertheless so far an insurer against the mere mistake of his necessary agent, that for laying out the road agreeably to the survey he is liable in an action of trespass to every land-holder upon whose land any deviation from the order so occasioned may exist. It was contended, in the argument of this motion for a new trial, that on principle a public commissioner or trustee is liable for every involuntary trespass by him thus committed, notwithstanding all the precaution, care and diligence, which he may have used to perform his duty faithfully according to the law. If such a principle as this does exist we are bound to declare it, however disreputable it may be to the jurisprudence of the country; but a critical examination of the authorities has fully satisfied us that

there is not a single adjudged case to support it; and nothing short of legislative power can introduce it into our code of law.

There is a manifest distinction between the liability of private individuals and of public officers. There is also a plain distinction between the liability of public officers acting for their own advantage, at their own peril in the discharge of an office, and that of public officers acting for the benefit of the public without the hope of profit to themselves as individuals. There is also a distinction between the liability of a public officer who is entitled to indemnity from those who employ him, and that of another public officer who is compelled by law to perform an act, for whom no indemnity whatever is provided, and who, in the absence of all other statutory definition, extension, or limitation of his liability, is simply enjoined before entering on the duties of his office, to take an oath to discharge his duties *to the best of his skill and judgment according to law.*

It seemed to be taken for granted in the progress of the argument, that there is something in the particular nature of this action of trespass which must render a man always answerable for involuntary wrong; yet this does not hold even in the case of a private individual, though the loose language of many elementary writers goes far to support the position. It is indeed laid down generally in the books that in the case of a battery, an actual intention to injure is not essential to the action, and the defendant is responsible in damages for any immediate injury to the person of another although the injury was not wilful. *Weaver* vs. *Ward, Hobart,* 134; *Underwood* vs. *Hewson,* 1 *Strange,* 596; 2 *Salkeld,* 637; 1 *Ld. Raymond,* 38; 4 *Modern,* 405; and *Scot* vs. *Shepherd,* 3 *Wilson,* 403. Yet it seems, as *Starkie* has well remarked when referring to these authorities, that some degree of negligence or inattention is even in this case essential, and that it is a good defence to this action to show that the accident was inevitable. 3 *Starkie's Evidence,* 1458. In the case of *Beckwith* vs. *Shordike,* 4 *Burrow,* 2092, it was held that " a merely accidental involuntary trespass may be justified, but a voluntary one cannot." And *Millen* vs. *Fandrye, Popham's Rep.* 161, was cited by the court. But this is neither an action for an assault and battery, where respect for a man's person has carried the law to the utmost strictness for its protection; nor is this an action of trespass for an injury done to property by a private individual acting without the injunction of law, and of his own motion or for his own advantage. It is the case of a public officer acting for the public good under a penalty for non-performance, and for a compensation which at best can be considered

as little more than nominal; entitled to no indemnity from any quarter for the consequences of involuntary error; and enjoined by the statute, which creates his office and circumscribes the duties of it, to discharge those duties according to the law only " to the best of his skill and judgment."

In the case of *Badkin* vs. *Powell et al. Cowp*, 476, where it was held that trespass vi et armis does not lie against a pound-keeper merely for receiving a distress, though the original taking be tortious, Lord Mansfield said "the pound-keeper is bound to take and keep whatever is brought to him: he takes the cattle, as he is obliged to do, at the peril of the person who brings them. It would be terrible." says he, " if a pound-keeper were liable to an action for refusing to take cattle in, and were also liable in another action for not letting them go ;" and *Aston*, justice, on the same occasion says, that in 1 *T. Jones*, 214, " there is a very sensible case, which determines, that if an officer do not intermeddle, but only does what belongs to his office, he shall not be liable for any precedent tortious act *of which he could know nothing.*" In the case before us we held at the trial, and we now reaffirm the principle, that if this road commissioner had intermeddled with the survey himself, or had ordered it to be run to suit his own whim, or had opened this road without the use of every usual and necessary precaution to prevent error, he would have been liable for any deviation from the route. But in fact he did use every precaution which it was in his power to use, to prevent error; he did not intermeddle with the surveyor after he had desired him to do his duty; and we unhesitatingly directed the jury that under these circumstances. if they believed that he opened the road according to the best lights he could obtain without being aware of any mistake, he was not liable on the issues joined in this action: for if there were any error, it arose while he was acting strictly within the scope of his authority; it was within the pale of his duty to employ a surveyor, and to run the road agreeably to the survey. The surveyor was competent and faithful ; the instructions to him were to run the courses and distances carefully according to the order, and it is hardly going too far to say that, if there was a mistake in this case, the trespass of the road commissioner was not only *involuntary*, but absolutely *unavoidable* by him. In the case of *Dewey* vs. *White et al.*, 1 *Moody & Malkin*, 56, where a stack of chimneys belonging to a house close to a highway, which, by reason of a former fire, was in immediate danger of falling on the highway, and was thrown down by some firemen belonging to the British fire office, it was held by *Best*, chief justice, in analogy to the doctrine of nuisances, that they were justified in so doing, and were not

answerable in an action of *trespass quare clausum fregit* for damages unavoidably done to an adjoining house of the plaintiff, by forcing and throwing the stack of chimneys on its roof. These firemen were acting in this business *for the benefit of the public,* and the chief justice did not hesitate to declare that, as it was their right and their duty to do the act thus done, they were not answerable in that action.

But in *Pratt* vs. *Hellman et al,* 6 *Dowling & Ryland,* 360, (a mere note of which was cited and relied on by the plaintiff's counsel,) which was an action of trespass, for erecting a wall on the roof of the plaintiff's house, it appeared that the wall was erected by virtue of the 42d section of the building act (14 *Geo.* 3, *c.* 78,) but was not erected *conformably* to the act : and this being the case of a *private individual,* acting for his own benefit and at his peril, *Abbott,* chief justice, said that " if professing to pursue the authority given by the act, he does not conform to the course which the statute has required of him, he will not be entitled to complete protection, but will be liable to answer to his neighbor for the damage he may have done." In this case, the court refused to sustain the action, because it was not brought within three months, the time limited by the 100th section of the building act. The dictum of the chief justice, however, though not the point decided, was entirely in accordance with the settled principle of distinction between private individuals and public officers or trustees.

In the case of *Seaman* vs. *Patten,* 2 *Caine's New York Term Rep's.* 312, 317, the opinion of the supreme court of New York, delivered by *Livingston* justice, was " that an officer, acting under a commission from government, who is enjoined by law to the performance of certain things, *if in his judgment or opinion,* the requisites therein mentioned have been complied with, and inhibited, under the like exercise of his own discretion, from doing other things ; who is sworn *to discharge these duties to the best of* his ability; and exposed also to penalties, as well for negligence, as for acting where he ought not, is not answerable to a party, who may conceive himself aggrieved for an omission arising from mistake or mere want of skill, if there be no bad faith, corruption, malice, or some misbehavior, or abuse of power." In the case before us, ingenuity cannot torture the language of the oath of the road commissioner as binding him to discharge any legal duty contrary *to the best of his own skill and judgment.* The case supposes that he has acted according to the best of his skill and judgment, and has opened the road precisely where he did honestly believe it was established by law. If he had not done this, but had opened the road according to surveys in which he had no confidence, he would have violated his solemn oath, no matter how

accurately those surveys might *now* prove to be. Then the question arises, is he guilty of a trespass, because he did not violate his oath? Suppose the fact to have been, that the true line of the road was different from that opened, arising out of a mistake of Enoch Lewis, in his allowance for magnetic attraction; still as the road commissioner believed (and he had good reason for believing) that Lewis was the most scientific and skilful surveyor that ran the route, had he opened the road on the line contended for by the plaintiff, contrary to his best skill and judgment, how could he possibly have justified his disregard of the oath? Did the legislature require of him to open this road otherwise than to the best of his skill and judgment? nay, have they not commanded and compelled him to open it in no other manner? It is clear to us, and we think it beyond controversy, that could the road now by him opened, be shown by the testimony of a hundred surveyors, to have deviated on the disputed line from the courses and distances on the return of the freeholders, *yet the true legal road is the road opened by the commissioner, to the best of his skill and judgment according to law.* We intimated at the time of the trial, that this question might hereafter arise; and now having maturely considered the subject, we declare our conviction, that if the commissioner did, as the jury has found he did, open this road according to the best of his skill and judgment, then the road thus opened was, and remains at this time, the lawful road; and upon the trial of an indictment against any man for obstructing that road, it would be no defence to show that the road was erroneously opened, unless it be also shown that the road commissioners did not open it according to the best of their skill and judgment; for the whole law of the legislature when taken together, reads substantially thus—*the road commissioners shall open the road, and they shall to the best of their skill and judgment, execute this as well as every other duty enjoined on them according to the law.* In the case of *Seaman* vs. *Patten,* already cited, where the court held the officer not answerable unless " bad faith, corruption, malice, or some misbehavior or abuse of power" could be shown, the oath of the officer was " that he would faithfully and impartially, according to the best of his ability, perform his duty, without any wilful omission, neglect or delay whatever." The oath of the searchers athorized to seize leather, in the case of *Warne* vs. *Varley, et al,* 6 *Durnford & East,* 443, was " *to do their office truly,*" as appears not only from the report of the case, but also from the *stat.* 2 *James* 1, *c.* 22, which we have examined. In such a case as that, and all others where the officer is sworn " to execute his duties" generally; or " to perform them with fidelity ;" or " well and truly to do his duties ;" no discretion is conferred upon the officer by

the oath, and he is not justified by it in exercising his own skill and judgment, and relying upon that alone ; but we have not found, after careful research, that any judge has ever yet decided, that where by law an officer was bound under oath to exercise his own skill and judgment, he was liable in an action of trespass for honestly doing so.

In the case of *Seaman* vs. *Patten, Livingston* justice is reported to have reflected strongly on the course of legal decisions touching this subject.   Those precedents which he designates as revolting, contain nothing revolting in their character for justice, which we can discover.  ˙That rule *against the operation of which,* he says modern legislators, unless from over-sight, generally take care to guard, is a rule as we understand it, which no wise legislator ever did or ever will repeal, unless in those cases where public policy shall induce a change of the common rules of justice.   It is possible, however, that we may differ from the learned judge in our understanding of what that rule is which he condemns, and what those precedents are which he considers as revolting.   The case of *Warn* vs. *Varley,* which he adverts to, though not fully reported in every particular, in *Term Reports,* was well decided by the court, and when the facts of the case are properly understood, we apprehend the propriety and justice of the determination will stand unquestioned.   In this case it was decided, that searchers of leather, under *Stat. James* 1, *c.* 22, were authorized to seize leather *insufficiently dried,* in order to carry it before other officers called triers; but that they could not seize any leather which was sufficiently dried, though *in their judgment it were not so;* and that if they did, they were liable to an action of trespass. This case was relied-upon in the argument of this cause, to show that the road commissioner was liable in this action, though the principle which governs the two cases is, totally different.   The first point of distinction between the two cases is, that by the 46th section of the *Stat. of* 2 *James* 1 *c.* 22, it is provided that " all leather which shall be seized by virtue of this act, and shall be found by the triers to be appointed as is aforesaid, or by the masters and wardens of the several companies aforesaid, to be insufficient, shall be forfeited and distributed as hereafter followeth: that is to say, such leather or stuff so seized within the city of London, or within three miles compass of the same, to be brought to Guild-hall in London, there to be prized by indifferent persons, and the value thereof to be divided into three parts, whereof one part *to be to the first seizor and seizors of the said. unlawful stuff,* and another part to the use of the chamber of London, and the other part to be distributed to the poor folks, as well being within the new hospital of St. Bartholomew's in London, as to

such poor householders as shall be inhabiting within the city of London or the circuit aforesaid, at the discretion of such persons as the mayor of the said city and four aldermen of the same for the time being, shall appoint for the same." (See 3 vol. English statutes at large 25, edition of 1763.) The case of *Warne* vs. *Varley*, did not, therefore, differ in principle from *Leglise* vs. *Champante*, 2 *Strange* 820; nor from that general class of cases in which custom-house and excise officers, *entitled to a share of the forfeiture, and, therefore, acting at their peril for their own benefit,* were held by the common law answerable to the party injured in an action if they made a wrong seizure, though there was a probable ground of seizure. The law which held private individuals answerable when acting for their own benefit applied equally to these officers when acting for their benefit; and such continued to be the law until the statutes 19 *George,* 2 *c.* 34, *sec.* 16, and 23 *George,* 3 *c.* 70, *sec.* 29. The same law applied equally to the revenue officers of this country, who were entitled to a portion of the forfeiture, for a violation of the revenue laws, but an act of congress, founded like the English acts on mere principles of state policy, has also provided them with the means of protection in the certificate of a court in case there be probable cause of seizure; and we take the principle to be universal that he who seizes either property or person in the name of the public, and is entitled to a forfeiture by virtue of the seizure, acts at his own peril unless he is protected by legislative enactment. The second point of distinction between the case before us and the case of *Warne* vs. *Varley,* will be found in the 31st section of the statute 3 *James,* 1 *c.* 22, which provides that the searchers of leather, who were the defendants in the last mentioned case, " shall be sworn before the said mayor and aldermen, to do their office truly." (3 vol. statutes at large, edition of 1763, page 22.) This shows that the counsel for the defendant, in that case, was entirely wrong in his reply in matter of fact, when he urged upon the court " that it was a matter of skill and experience on which the defendants acted, and that they were sworn to act according to the best of their own judgment." Indeed, the reporter's own statement of the case shows that the oath of the searchers was absolutely *to execute their office truly.*" The court, therefore, well said that the legislature, not having given the defendants any protection, having only authorized them to seize goods of a certain denomination, which were not seized, they were liable. *Grose,* justice, said, " we cannot substitute ourselves in the room of the legislature and give a protection to these officers which the act of parliament has not given." *Lawrence,* justice, said, " in this case the defendants were not acting as judges; they had seized the leather in order to

carry it before other persons, the triers, who were to act as judges."
Now, suppose that in this case an action had been brought against
the triers (who, under the 33d section of this statute of 2 *James*, were
sworn "*to inquire straightly examine and try whether* the leather
seized was sufficiently dried,") for improperly condemning the leather,
and that it had clearly appeared on the evidence that the triers were
mistaken in their decision; in the absence of malice or negligence,
would any one contend that the triers were liable to the action?
Surely not; and why not? The answer is, because the act of par-
liament compelling them to swear, to inquire, examine and try, re-
quires of them the exercise of their best skill and judgment in doing so,
and therefore the act of parliament by necessary implication protects
them for obedience to its command. Such obedience would be a
complete justification for them in any action which could be brought
against them for an alleged improper discharge of a duty enjoined
upon them by that statute. The last point of difference between the
case before us and the case of *Warne* vs. *Varley,* to which we shall
advert, is in the form of the plea of justification. In the latter case
the plea was, that the leather was not well dried *in the judgment of
the defendants* according to the act of parliament. The plaintiff re-
plied that the leather was well dried, and that the triers found so.
The question arose upon a general demurrer to this replication, and
the court held the plea bad because the act of parliament had not
authorized the searchers to seize leather *according to their judgment,*
as it undoubtedly would have done had it compelled them to *swear*
to seize leather not well dried according to their judgment. Now,
in the case before us, suppose that the defendant's plea of justification
had been, that the road opened was to the best of the skill and judg-
ment of the road commissioners, opened according to the act of
assembly. Suppose, then, that the plaintiff had replied admitting the
plea, but simply averring that, in point of fact, the road was not
opened according to the courses and distances on the return of the
freeholders, and was opened on a route deviating from that return.
To carry out the analogy between the cases, then, suppose the de-
fendant had demurred to the plaintiff's replication. The question
presented by such a record would not admit of a doubt in the mind
of any good pleader; for such a plea would be clearly good as a
justification; and such a replication would be as clearly bad.

Principles of national policy have caused legislative protection to
be given to revenue officers in the discharge of their duty. These
cases stand on peculiar grounds; but what principle of policy re-
quires similar protection to be extended to those who, for their own

profit, are to seize goods not marketable, or not merchantable, is not so apparent.

In the case of *Sutton* vs. *Clerke*, 6 *Taunton*, 29, and 1 *Marshal*, 429, *s. c.*, which was an action on the case, against the trustee of a turnpike road, *Gibbs*, chief justice, said "that the defendant was a trustee under an act of parliament, executing duties imposed upon him by the act, and deriving no emolument from what he did; acting to the best of his skill and judgment at the time; taking the best advice, and doing only that which it was his duty to do: and that if such was his conduct, he was not answerable for the subsequent consequences. Upon the discussion of this point two cases were cited, one of which is supposed to be a clear authority for the plaintiff, and and the other, it is contended on the other side, is equally as clear an authority for the defendant. The first is the case of *Leader* vs. *Moxon.* That was an action against commissioners for so raising the pavement, as to obstruct the plaintiff's doors and windows. The commissioners did not exceed their jurisdiction, and were exercising powers given them by an act of parliament; but the court thought they were acting in a most tyrannical and oppressive manner, and that though they had a right to pave, and perhaps to raise the street, they had acted so arbitrarily, that they were answerable. With that judgment this court entirely agrees. If commissioners, acting within their jurisdiction, act wantonly and oppressively; they are responsible to any individual for the injury they do him. There the injury might have been avoided by doing the act in a different way; here the commissioners, at the time of doing the act, took every precaution to prevent injury to the surrounding land. The other case is that of *The Governors and Company of the British Cast Plate Manufacturers* vs. *Meredith.* Commissioners were directed to pave, repair, raise, sink, or alter and render secure a very dangerous place in the road, and they had, in so doing, raised the ground opposite to the gateway of the plaintiff's, so that they could not enter the gateway. The commissioners were directed by the act to make this a gradual descent; and the case reserved stated, that it could only be done by making it a regular inclined plane from the top to the bottom, which they had done. The act, therefore, which prescribed what should be done, in effect prescribed the manner of doing it, because there was no other manner; that, therefore, does not come up to the defendant's case: here the act prescribes what shall be done, not the manner of doing it. This case, therefore, is to be determined on principle alone, and upon principle, we are of opinion that the defendant is not answerable in this action. *This case is perfectly unlike that of an individual, who, for his own benefit, makes an improvement on his*

*own land according to his best skill and diligence, and not forseeing that it will produce an injury to his neighbor; if he thereby unwittingly injure his neighbor, he is answerable.* The resemblance fails in the most important point of comparison, that his act is *not done for a public purpose,* but for private emolument. Here the defendant is not a volunteer; he executes a duty imposed upon him by the legislature, which he is bound to execute. He exercises his best skill, diligence, and caution, in the execution of it; and we are of opinion that he is not answerable for an injury which he not only did not forsee, but could not forsee. He has done all that was incumbent on him, having used his best skill and diligence.

The principle of the foregoing cases was reaffirmed by the Court of Common Pleas in the cases of *Hall* vs. *Smith et al.,* and *Billington* vs. *Smith et al.,* 2 *Bingham,* 156; 9 *Eng. Com. Law Reps.,* 357. *Best,* chief justice, who delivered the opinion of the court in that case, said, " these commissioners are charged with the execution of a public duty, for the performance of which they receive no emolument or advantage: they must employ persons to do the works which the act of parliament orders to be done, and the commissioners cannot be expected continually to watch such persons while so employed." He afterwards proceeds to lay down the true rule governing these cases, in the following words: " If commissioners, under an act of parliament, *order something to be done which is not within the scope of their authority,* or are themselves guilty of negligence in doing that which they are empowered to do, they render themselves liable to an action; but they are not answerable for the misconduct of such as they are obliged to employ." If this doctrine be applied to the case of this road commissioner, it is clear that he is not responsible. By the finding of the jury he did not order any thing to be done which was not within the scope of his authority, nor was he guilty of any negligence. His order to the surveyor was to ascertain the route of the road truly; and, therefore, for the mistake of the surveyor, of which he had no knowledge, he was not accountable.

In the case of *Hall* vs. *Smith, Best,* chief justice, thus discusses the principle which is applicable to cases of misconduct or mistake, by the necessary agents of public commissioners: " If the doctrine of *respondeat superior* were applied to such commissioners, who would be hardy enough to undertake any of those various offices by which much valuable, yet unpaid, service is rendered to the country? Our public roads are formed and kept in repair; our towns paved and lighted; our lands drained and protected from inundation; our internal navigation has been improved; ports have been made and are

kept in order, and many other public works are conducted by commissioners who act spontaneously. Such commissioners will act no longer if they are to make amends from their own fortunes for the conduct of such as must be employed under them. It would be much better that an individual injured by the act of an agent should endure an injury unredressed, than that the zeal of the most useful members of the community should be checked by subjecting them to a responsibility for agents from whose services they derive no benefit, and who are seldom under the immediate control of their employers whilst they are employed on the works they are ordered to do. The commisssioners taking the advice of their surveyors and engineers, are to direct what tunnels or other works are to be made. Few commissioners know how such works should be executed; they ought not, therefore, to be answerable for an imperfect execution of them; nor can it be expected that they shall attend day by day to see that proper precautions are taken against accidents, or get up in the night to see that lights are burned to warn passengers of the danger from the temporary obstructions in the road. If, by taking their office of commissioners, they have not undertaken the performance of these duties, with what justice can they be charged with the consequences of the neglect of them? The maxim of *respondeat superior* is bottomed on this principle, that he who expects to derive advantage from ~~an act~~ which is done by another for him, must answer for any injury which a third person may sustain from it. This maxim was first applied to public officers by the statute of *Westminster*, 2 c. 11, from the words of which statute it is taken. "*Si custos gaolæ non habeat per quod justicietur vel unde solvat, respondeat superior suus qui custodiam hujusmodi gaolæ sibi commisit.*" The terms of the statute of *Westminster* the second, embrace only those who delegate the keeping of jails to deputies, and were intended only, as *Lord Coke* tells us, (2 *Inst.* 382,) to apply "to those who, having the custody of jails of freehold or inheritance, commit the same to another that is not sufficient." The principle of the statute has, however, since been extended to sheriffs, who are responsible for their under-sheriffs and bailiffs, but has not been applied to any other public officers. Although the office of sheriff be now a burthensome one, yet they are entitled to poundage and other fees, for acts done by their officers, which in old time might be a *just equivalent for their responsibility.*"

What is here said by the court in delivering this opinion, sufficiently explains the distinction between the liability of a road commissioner and that of a sheriff; but there are other reasons for the distinction which it may be proper to advert to. Though the sheriff

is answerable wherever he or his officer, on a *fieri facias* against the goods of A, takes the goods of B, yet it is a settled rule that, "wherever the property in goods seized on a *fieri facias* is disputed, the courts will, on the suggestion of a reasonable doubt, enlarge the time of the sheriff to make his return, until the right be tried between the contending parties, or until one of them has given a sufficient *indemnity* to the sheriff or his officer." (*Venables* vs. *Wilks,* 4 *J. B. Moore,* 339 ; *Thurston* vs. *Thurston,* 1 *Taunt.* 120 ; *Ledbury* vs. *Smith,* 1 *Chitty's Rep.* 294; *Rex* vs. *Sheriff of Devon, ib.,* 643 ; *Shaw* vs. *Tunbridge,* 2 *Blac. Rep.* 1064; *Watson on the Law of Sheriff,* 196.) Indeed, the court has a discretionary power in all cases to protect the sheriff, upon such terms as to them seem proper, (*Watson on the Law of Sheriff,* 196,) so that by the use of reasonable precaution the sheriff need not be made answerable for mistakes. The court has generally protected the sheriff, when he has applied for protection, except where the law was clear as to his course of duty. True it is that trespass will lie against him for abuse in the execution of process, as for taking a defendant out of his bailiwick, or after the return day of the writ, or for breaking open an outer door, or indeed for any other excess ; for in all these cases there is either malice or negligence. But if the sheriff seize and sell goods after a secret act of bankruptcy, and before any commission issues pay the money over to the plaintiff, the sheriff is excused. For, said *Lord Mansfield,* in *Coppendale* vs. *Bridgen,* 2 *Burrow,* 818, "it was impossible for him to know it, and he was under an *invincible ignorance* of the event." If the court, out of which a writ issues, has jurisdiction over the cause, although the proceedings whereon the writ is grounded be erroneous, or even the writ itself be irregular, yet the writ is sufficient for the sheriff's justification : even if the writ be set aside for irregularity, after it is executed by the sheriff, yet it is sufficient to justify his acts. (*Watson on Law of Sheriff,* 86.) But it cannot be necessary to pursue this part of the subject further. The analogy between the sheriff and the road commissioner, contended for by the plaintiff's counsel on the argument of this motion, entirely fails. The sheriff is an officer sworn to do his duty with fidelity ; entrusted with no discretionary power, but bound to obey the mandates of the law, for a consideration which is held and intended to be a full remuneration for all his responsibilities.

Having examined the cases which exhibit the opinion of the English Court of Common Pleas, it only now remains to notice the opinion of the Court of King's Bench, in the case of *Boulton* vs. *Crowther,* 2 *Barnwell and Cresswell,* 703, where it was held "that the trustees under the general turnpike act of England, are not liable to an action

for a consequential injury resulting from an act which they are authorized to do." In this case the court fully recognized the principle of the case of *Sutton* vs. *Clerke*. *Littledale, J.*, says " I agree that a private individual must so use his own land as not to injure that of another, but a private individual acts for his own benefit, and he ought not to obtain a benefit at the expense of his neighbor. *Abbott,* chief justice, says " the act of parliament, I think, authorized the trustees to do what they have done. If in doing the act, they acted arbitrarily, carelessly, or oppressively, the law in my opinion has provided a remedy. But the fact of their having so acted is negatived by the finding of the jury." . In reference to this case as well as others, where it has been held that an action will not lie for a consequential injury, occasioned by an act of a public officer, acting within the scope of his authority, an attempt was made by the plaintiff's counsel during the argument of this motion, to distinguish the principle of those cases from that of the case before us; first, because it was said this was the case of an excess of power, whereas those were cases in which the public officers acted entirely within the scope of their power. It appears to us, that this opinion is the result of an entire misapprehension of the authority of these road commissioners. They certainly were acting within the scope of their authority in opening this road according to the best of their skill and judgment. The very act complained of as a trespass, was the result of the deliberate and careful exercise of their best skill and judgment. Not only the letter but the whole spirit of the act of assembly, authorized them to open the very road which they did open, precisely as they have opened it. They have acted as fairly within the pale of their power as they could have done had they opened a road under an act of assembly specially directing them to open it according to the survey of the very competent surveyor whom they themselves had selected. Here then, the pretended injury was the *immediate* effect of the very act which the legislature had ordered to be done: in the other cases the injury was the *consequential* effect of an act so authorized. The principle, therefore, which governs both classes of cases is the same; but the justice of it when applied to actions of trespass for immediate injuries done by an officer acting within the scope of his legal authority, has ever been considered so palpable, that there is not a case on record, within our knowledge, in which a doubt of it has ever been suggested. In the case of *Hall* vs. *Smith*, above cited, and in other cases where the action was case for a consequential injury arising out of an act done by commissioners or trustees, within the scope of their authority, it has indeed been contended by counsel, that they were liable for consequential injuries.

With regard to all that was said in the argument of this motion, touching the policy of holding public officers strictly accountable for error, we hold with a late chief justice of an English court "that public policy is a doctrine on which judges should proceed with caution: otherwise, the rights of the people would depend on their discretion. We ought not to trust ourselves with so dangerous a power as that of acting judicially on disputable policy. We have no power to make law, and if in this case we had, we do not perceive the existence of any principle of public policy to induce us to change it.

It is, therefore, the opinion of the court, that in opening new roads the road commissioners of New Castle county are answerable for any deviation from the line of the road returned by freeholders to the Court of General Sessions of the Peace, and duly approved according to law, if that deviation arise either from their malice, negligence, or the omission to exercise their best skill and judgment in the performance of their duty. But they are not answerable for an accidental deviation, caused by the *mistake* of a competent and faithful surveyor, employed and directed by them to ascertain the route of the road in the absence of land-marks, if not aware of such deviation at the time of opening the road; nor are they answerable in any form of action for the discharge of any legal duty, honestly and carefully done, according to the best of their skill and judgment.

The rule, therefore, must be discharged.

*J. A. Bayard* and *R. H. Bayard*, for plaintiff.
*Rogers* and *Hamilton*, for defendant.